MATTHEW M. YELOVICH (NYBN 4897013)
Attorney for the United States

MATTHEW M. YELOVICH (NYBN 4897013)
Acting Chief, Criminal Division

DAVID J. WARD (CABN 239504)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7230
    david.ward@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 23-CR-00402 SI |
|     Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE UNDER U.S.S.G. § 5K1.1 |
|     v. | |
| CYRIL YU, | Sentencing Date: June 28, 2024 |
|     Defendant. | Time: 11:00 a.m. |
| | Judge: Hon. Susan Illston |

## I.    INTRODUCTION

Defendant Cyril Yu comes before the Court for sentencing after pleading guilty to one count of Conspiracy to Commit Honest Services Wire Fraud. Yu admitted to accepting over $15,000 in bribes while working as a Building Plans Engineer at the San Francisco Department of Building Inspection, pocketing envelopes of cash and accepting free meals and drinks, all intended to influence him to issue and expedite building permits for building projects submitted by a trio of San Francisco building plans and design firm. Yu was a public servant tasked, literally, with insuring the safety and soundness of office and residential buildings in San Francisco, and he betrayed this trust to line his pockets and to

U.S. SENTENCING MEMO         1
23-CR-00402 SI

1   feed his greed. This conduct was inexcusable, and warrants a significant sentence. To his credit, Yu

2   promptly admitted responsibility after being charged, and he has cooperated with the government.

3   Given all this, the government respectfully asks this Court to grant the government's motion for a

4   downward departure under § 5K1.1 of the U.S. Sentencing Guidelines then further vary downward

5   based on the factors in 18 U.S.C.  3553(a), and impose a sentence on Yu to 12 months and a day in

6   custody, followed by three years of supervised release, and impose a fine of $25,000.

7   **II.     BACKGROUND**

8           The facts of Cyril Yu's crimes are detailed in the Criminal Complaint filed in this case (*Dkt. 1),*

9   as well as the Plea Agreement *(Dkt. 22)*, and the Presentence Report *(Dkt. 24)*, along with the Plea

10  Agreements filed in *United States v Bassam Ghassemzadeh,* 23-CR-0418, *United States v. Sia Tahbazof*,

11  23-CR-00421 SI, *United States v. Reza Khoshnevisan,* 23-CR-00420 SI, and *United States v. Bernard*

12  *Curran*, 21-CR-0453 SI.

13                    *a.*      The DBI  Bribery Scheme

14          In 2014, Cyril Yu was hired by the San Francisco DBI as a Building Plans Engineer working in

15  the Building Plan Review Services Department.  *PSR* ¶  11.  Yu was tasked with reviewing and

16  approving various building construction and remodeling plans submitted to DBI for approval.  *Id.*  Yu

17  was required to insure that the building plans, and their underlying building projects, were done safely

18  and in accordance with city and state building and safety codes.  *Dkt. 1 (Criminal Complaint)* ¶  13.

19          But beginning in January 2018, Yu instead began taking bribes in return for expediting and

20  approving building plans.  By his own admission, Yu accepted over $15,000 in cash bribes, along with

21  free meals and drinks, from Bassam Ghassemzadeh, an executive a a building plans design and

22  consulting firm.  *Id.* ¶  15.  Ghassemzadeh would take Yu to lunch, where he would pay for meals and

23  drinks, and then would hand Yu an envelope containing between $1,200 and $1,700 in cash in return for

24  Yu approving and expediting Ghassemzadeh and his company's building plans.  *Id.* ¶  18.  Both Yu and

25  Ghassemzadeh knew then that their conduct was illegal.  To conceal their crime, Gassemzadeh would

26  pick up Yu for lunch, and then surreptitiously hand Yu an envelope of cash in the car, so that they would

27  not be seen.  *Id.*  In return, Yu admits that he approved plans for Ghassemzadeh and his company, and

28

U.S. SENTENCING MEMO                          2
23-CR-00402 SI

that he would do so without subjecting them to the same review process that would be required of other plans. *Id.* Instead, Yu admits he would find Ghassemzadeh's plans, pull them from the review queue, and quickly approve them. *Id.* Yu accepted over $15,000 in bribes over the course of the conspiracy, which only ended in the weeks before Yu resigned from DBI in February 2021. *Id.*

## III.   GUIDELINES CALCULATION ANALYSIS

In the Plea Agreement, the government and the defendant agreed to a U.S. Sentencing Guidelines calculation that included a two-point reduction under the Zero-Point offender Guidelines. *Dkt. 22.* This was incorrect, as defendant Yu was convicted of driving under the influence in 2009, and thus had one criminal history point. *PSR* ¶ 39. Therefore, the government agrees with U.S. Probation's calculation of the U.S. Sentencing Guidelines, which are as follows:

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. §2C1.1(a)(2): | 14 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2: | |
| | The offense involved multiple bribes. U.S.S.G. § 2C1.1(b)(1) | +2 |
| | The value of the payments or benefits received exceeded $15,000; U.S.S.G §2C1.1(b)(2); U.S.S.G. §2B1.1(b)(1)(C): | +4 |
| c. | Adjusted Offense Level: | 20 |
| d. | Acceptance of Responsibility, U.S.S.G. § 3E1.1(a), (b): | - 3 |
| e. | Total Offense Level | 17 |

## IV.   SENTENCING RECOMMENDATION

### A.   Legal Standard

The U.S. Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process, and are to be a guide and reference point for the Court throughout the sentencing process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to impose a sentence "sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the following factors set out in 18 U.S.C. § 3553(a):

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

U.S. SENTENCING MEMO                3
23-CR-00402 SI

(2)   the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

(3)   the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.   The Government's Recommended Sentence Vindicates the 18 U.S.C. §3553(a) Sentencing Factors**

**1.   *The Facts and Circumstances and the Need For the Sentence to Reflect the Seriousness of the Offense and to Provide Just Punishment for the Offense***

The San Francisco DBI exists to ensure the safety and soundness of buildings and construction in San Francisco. DBI's mandate is to insure that the residents of San Francisco, and those who work in or visit the city, are safe in their homes and their workplaces.  Defendant Yu was expected to be the first line of defense.  Instead, Yu betrayed this duty and ignored his responsibilities, all in return for free meals and drinks, and for envelopes of cash.

This crime, which stretched on for over two years, was a fundamental betrayal of Yu's obligations and duties to the people of San Francisco.  His conduct put at risk the safety and soundness of the City's buildings, and exposed City residents and others to risk of grave harm.  Yu's conduct also harmed the honest builders and companies who did not receive favored treatment, and were therefore disadvantaged by the corruption of Yu and his conspirators.  Additionally, the exposure of this corruption has cost the city hundreds of thousands of dollars in costs as it attempts to assess the impact of the crimes by Yu and other corrupt DBI employees and their co-conspirators.[1]

Finally, there is the broader societal and civic harm wrought by public corruption schemes. *See e.g, United States v. Brennan* 629 F. Supp. 283, 300 (E.D.N.Y. 1986) ("Bribery is a betrayal of trust. The expectation that one will do what one is relied on to do, is a precious necessity of every social enterprise . . . no crime is more corrosive of our institutions.").  As Justice Clarence Thomas explained,

---

[1] https://www.sfchronicle.com/bayarea/article/sf-corruption-building-inspection-audit-17885560.php.

U.S. SENTENCING MEMO                    4
23-CR-00402 SI

1   bribery is the "perversion or destruction of integrity in the discharge of public duties." *Nixon v. Shrink*

2   *Missouri Government*, 120 S. Ct. 897, 923 (J. Thomas, dissent), quoting 3 Oxford English Dictionary

3   974 (1989).  Chief Justice William Rehnquist echoed the same sentiment in *Federal Election*

4   *Commission v. National Conservative Political Action Committee*:, writing that "corruption is the

5   subversion of the political process.  Elected officials are influenced to act contrary to their obligations of

6   office by the prospect of financial gain to themselves."  470 U.S. 485, 497 (1985).

7           The nature and circumstances of this type of offense, and the impact it has had on the City of San

8   Francisco and its residents and officials, warrants a significant sentence as a means, in part, to reflect

9   "the seriousness of the offense, [and] promote respect for the law, and to provide just punishment for the

10  offense."  18 U.S.C. § 3553(a).

11                  **2.      *The History and Characteristics of the Defendant***

12          Cyril Yu should be an American success story.  He was raised in a stable household by two

13  parents, and obtained a bachelor's degree in Civil Engineering and a master's degree in Civil and

14  Environmental Engineering, both from the University of California, Davis.  *PSR* ¶¶  51, 58.  He has two

15  professional engineering licenses.  *Id.*  He reports to be in a stable, long-term relationship, raising two

16  children with his significant other.  *PSR* ¶ 51.  Yu was employed at DBI for almost eight years, and

17  currently owns and operates his own business.  *PSR* ¶ 60.

18          Yet despite all of the opportunities and responsibilities he was given, Yu turned to bribery.  He

19  allowed his greed to overtake any sense of right or wrong, to trump the duty that he owed to the City of

20  San Francisco as a public employee serving in a critical public safety role.

21          This an inexcusable breach of trust, particularly for someone like defendant Yu, a highly

22  educated and successful public servant.  Mr. Yu fully knew what he was doing was illegal, yet he let his

23  greed overtake any sense of civic duty or honesty.  However, defendant Yu has no prior felony

24  convictions, accepted responsibility promptly, and has cooperated with U.S. Probation during his pretrial

25  release.  The Court should consider those factors, which warrant some variance from the recommended

26  U.S.S.Gs under 18 U.S.C. § 3553(a).

27  //

28

U.S. SENTENCING MEMO                    5
23-CR-00402 SI

**V.      MOTION FOR DOWNWARD DEPARTURE UNDER U.S.S.G.  5K1.1**

   **a.  The Court Should Grant the Government's 5K1.1 Motion**

"Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1.  The Court may consider the following when determining the appropriate amount of the reduction; 1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; 2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant; 3)  the nature and extent of the defendant's assistance; and 4) the timeliness of the defendant's assistance. U.S.S.G. § 5K1.1.

In this case, after being charged and arrested in May 2022, defendant Yu promptly agreed to accept responsibility and admit his crimes, and to cooperate with the government in its ongoing investigation into corruption inside DBI.  Yu met with attorneys from the government and agents from the FBI on multiple occasions, and provided the government with information, including information about his co-conspirator Ghassemzadeh.  While helpful to the government, in the end Yu's cooperation did not provide sufficient evidence or leads that resulted in charges against any other individuals. Nonetheless, the government believes that Yu's willing cooperation qualifies as substantial assistance under §  5K1.1.  The government respectfully asks the Court to grant its motion for a downward departure from the Sentencing Guidelines under U.S.S.G. § 5K1.1

   **b.  The Government's Sentencing Recommendation Avoids Unwarranted Sentencing
       Disparities**

A downward departure, along with a variance, to a sentence of 12 months and a day, followed by a three-year term of supervised release, and a fine of $25,000, is sufficient but not greater than necessary, and does not create unwarranted sentencing disparities among the similarly-situated defendants charged as part of the government's San Francisco DBI corruption prosecutions.  *See* 18 U.S.C. § 3553(a).

Yu is the second DBI employee to come before this Court for sentencing.  On July 19, 2023, the Court sentenced former DBI Senior Building Inspector Bernard Curran to 12 months in custody after

1   Curran pled guilty to accepting illegal gratuities in violation of 18 U.S.C. § 666(a)(1)(B). *See United*

2   *States v. Bernard Curran,* 21-CR-0453 SI *(Dkt. 70).*  Like Yu, Curran was a public employee working at

3   DBI, and like Yu, Curran betrayed his duty of honest services in return for money.  Curran's Guidelines

4   were slightly lower than Yu's Guidelines, but Yu cooperated with the government and pled guilty

5   shortly after being charged.  Given all this, a sentence for Yu of 12 months and a day does not create an

6   unwarranted sentencing disparity compared to Curran's sentence.

7          The Court has also sentenced Yu's co-conspirator Ghassemzadeh, who paid bribes to Yu, along

8   with the co-owners (and relatives) of Ghassemzadeh, Sia Tahbazof and Reza Khoshnevisan. *See U.S. v.*

9   *Ghassemzadeh,* 23-CR-0418, *U.S. v. Tahbazof*, 23-CR-00421 SI, and *U.S. v .Khoshnevisan,* 23-CR-

10  00420 SI.  In those cases, the Court sentenced the defendants to terms of probation.  However, those

11  defendants approached the government, admitted their conduct, and agreed to cooperate, all before the

12  government was aware of their crimes.  Given all this, the government's recommended sentence here

13  does not create unwarranted sentencing disparities.

14          **c.  Yu Can and Should Pay a Significant Fine**

15          Finally, as noted in the PSR, Yu has significant assets.  *PSR ¶ 62.*  As such, he can afford to pay

16  a substantial fine.  Given that Yu's crimes were driven by greed and profit, a significant fine is

17  appropriate and would serve as just punishment.  Therefore, the government recommends a fine of

18  $25,000, the same fine that was imposed on his co-conspirators Ghassemzadeh and Khoshnevisan.

19  Given defendant Yu's assets, the government asks that the Court order payment of the fine be made

20  within 60 days of imposition of judgment.

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

U.S. SENTENCING MEMO                    7
23-CR-00402 SI

1  **VI.     CONCLUSION**

2          For the foregoing reasons, the government recommends that the Court grant the government's

3  motion for a downward departure under § 5K1.1, to further vary downward from the recommended U.S.

4  Sentencing Guidelines in this case, and sentence defendant Yu to a term of imprisonment of 12 months

5  and a day, followed by three years of supervised release, and impose a $25,000 fine.

6

7                                                    MATTHEW M. YELOVICH
                                                     Attorney for the United States
8

9  Dated: June 21, 2024                             */s/ David J. Ward*
                                                     DAVID J. WARD
10                                                   Assistant United States Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. SENTENCING MEMO                    8
23-CR-00402 SI